IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00235-WYD-CBS

KENNETH W. PORTIER,
    Plaintiff,
v.

LT. ANN DEFUSCO, CSP, and
LT. R. OLINETTE, CSP,
    Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on Defendants' "Motion to Dismiss" (filed April 28, 2008) (doc. # 21). Pursuant to the Order of Reference dated March 7, 2008 (doc. # 13) and the memorandum dated April 29, 2008 (doc. # 22), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, Mr. Portier's "Reply" [sic] ("Response") (filed June 27, 2008) (doc. # 28), Defendants' Reply (filed July 10, 2008) (doc. # 29), Mr. Portier's Surreply (filed September 30, 2008) (doc. # 43), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

    Mr. Portier is currently incarcerated at the Colorado State Penitentiary ("CSP") in Cañon City, Colorado. Proceeding *pro se*, Mr. Portier brought this civil action pursuant to Title 42 U.S.C. § 1983. (*See* Complaint (doc. # 3) at p. 3 of 18). Mr. Portier alleges that on April 9, 2004 he was transferred to CSP, where he was placed in administrative segregation. (*See* Complaint (doc. # 3) at p. 3 of 18). At that time he was permitted to have his television. (*See id.* at p. 4 of 18). Mr. Portier alleges that during a "facility-wide shakedown" on September 6, 2004, his "televison set was damaged and no longer servicable." (*See id.*). Mr. Portier alleges that he filed a grievance regarding his television

1

on September 23, 2004.  (*See* Complaint (doc. # 3) at p. 5 of 18).  He alleges that on July 14, 2005, he also filed a lawsuit regarding his television set.  (*See id.*).  Mr. Portier alleges that his television was destroyed on November 22, 2005.  (*See* Complaint (doc. # 3) at p. 5 of 18).  Mr. Portier acknowledges that as of January 18, 2006 he was no longer entitled to a television, as "his privileges were restricted for refusing classes."  (Complaint (doc. # 3) at p. 5 of 18).  Mr. Portier alleges that he "was wrongfully denied a televison set for a period of 495 days," from the filing of his grievance on September 23, 2004 to the loss of his television privileges on January 18, 2006.[1]  (*See id.*).  Mr. Portier alleges that Defendants violated his "First, Eighth, and Fourteenth Amendment rights when they intentionally deprived Plaintiff of a loaner television set for 495 days in reprisal and retaliation" for filing a grievance regarding his television set.  (*See* Complaint (doc. # 3) at p. 6 of 18).  Mr. Portier further alleges that his television privileges were "restricted without due process of the law; and for such a long period of time as to amount to cruel and unusual punishment under the Eighth Amendment."  (*See id.*).  As relief, Mr. Portier seeks monetary damages.  (*See* Complaint (doc. # 3) at p. 12 of 18).

II.     Standard of Review

Without citing any of the Federal Rules of Civil Procedure, Defendants move to dismiss the Complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).  The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.  *Twombly*, 127 S.Ct. at 1965.  "Factual allegations must be enough to

---

[1] January 31, 2006 is 495 days after September 23, 2004.

raise a right to relief above the speculative level." *Id.*

Because Mr. Portier appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

III. Analysis

Section 1983 creates a cause of action where a "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution." Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). *See also Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) ("In order to successfully state a cause of action

under section 1983, [Mr. Portier] must allege . . . the deprivation of a federal right. . . .") (internal quotation marks and citation omitted). To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

A.  Liability of Defendants in their Official Capacities

Mr. Portier does not indicate whether he is suing the Defendants in their individual capacities, their official capacities, or both. (*See* Complaint (doc. # 3) at p. 3 of 15). To the extent that Mr. Portier is suing Defendants in their official capacities, he is actually attempting to impose liability on Defendants' employer, the Colorado Department of Corrections ("CDOC"). *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state).

The CDOC is considered an agency of the State of Colorado. *See* Colo. Rev. Stat. § 24-1-128.5. States and state officials sued in their official capacities are not "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). Absent a waiver, the Eleventh Amendment forbids a suit for damages against a state in federal court. *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). Such entities cannot be sued for monetary damages arising from alleged conduct which deprives a plaintiff of his or her civil liberties. The Eleventh Amendment confers total immunity from suit, not merely a defense to liability. *Ambus*, 995 F.2d at 994 (citation omitted). To the extent that Mr. Portier seeks damages against Defendants in their official capacities, his claim is properly dismissed with prejudice.

B. Liability of Defendants in their Individual Capacities

The Eleventh Amendment does not bar actions for damages against state officials in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 164 (1985). To the extent that Mr. Portier is suing Defendants in their individual capacities, personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law. *Graham*, 473 U.S. at 165-67.

1. Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). As for the objective component, "extreme deprivations" are required to make out a conditions-of-confinement claim. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). In a conditions-of-confinement case, a "sufficiently serious" deprivation is shown when "a prison official's act or omission . . . result[s] in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297). The "deliberate indifference" subjective

standard applies to claims of inhumane conditions of confinement. *Wilson*, 501 U.S. at 303-04. A finding of deliberate indifference requires a showing that the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Under this standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Mr. Portier alleges that his television privileges were "restricted . . . for such a long period of time as to amount to cruel and unusual punishment under the Eighth Amendment." (*See* Complaint (doc. # 3) at p. 6 of 18). The court finds no support in the law for Mr. Portier's claim that restricting his access to television amounts to a constitutional violation. As a matter of law Mr. Portier's allegations are not sufficiently serious to state a violation of the Eighth Amendment. *See Murphy v. Walker*, 51 F.3d 714, 718 (7th Cir. 1995) (finding "no support in the case law" for claim that denial of "cigarettes and television amounts to a constitutional violation"); *James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992) ("a prisoner who is denied . . . a television set has not set out a deprivation of [his rights under] . . . the eighth amendment"); *Scheanette v. Dretke*, 199 Fed. Appx. 336 (5th Cir. 2006) (denial of televisions to death row inmates not cruel and unusual because watching television is not a life necessity or a basic human need); *Elliott v. Brooks*, 188 F.3d 518, 1999 WL 525909 (10th Cir. 1999) (no constitutional right to watch television in prison).[2] Mr. Portier fails to state a claim for an Eighth Amendment violation.

2.  Fourteenth Amendment

Mr. Portier alleges that he had a liberty and a property interest in a loaner television and that his television privileges were "restricted without due process of the law." (*See*

---

[2] Copies of these unpublished decisions are attached to this Recommendation.

Complaint (doc. # 3) at p. 6 of 18). The Due Process Clause of the Fourteenth Amendment provides, in pertinent part "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. Amend. XIV. "A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citation omitted).

Mr. Portier argues that "mandatory language" of Colorado state statutes and CDOC administrative regulations have created a constitutionally protected right to a loaner television. (*See, e.g.*, Response (doc. # 28) at pp. 32-33 of 41; Surreply (doc. # 43) at pp. 24-28 of 46). The Supreme Court has expressly rejected Mr. Portier's argument. The Supreme Court has instructed that unless conditions of confinement "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," state regulations or policies do not create a liberty interest for prisoners in the conditions of confinement." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). *See also Steffey*, 461 F.3d at 1221 ("the Supreme Court held that a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' ") (quoting *Sandin*, 515 U.S. at 484). Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination. . . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485-87). The Tenth Circuit Court of Appeals "has ruled that property interest claims by prisoners are also to be reviewed under *Sandin's* atypical-and-significant-deprivation analysis." *Steffey*, 461 F.3d at 1221 (citing *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir.1999)) (other citations omitted). "The Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition

complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.' " *Cosco*, 195 F.3d at 1224 (alteration in original, quoting *Sandin*, 515 U.S. at 486).

Because the alleged deprivation of a loaner television does not present an atypical, significant hardship, as a matter of law, Mr. Portier's claim for deprivation of a loaner television does not state a valid claim for violation of his due process rights. *See Rahman X v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002) (prisoner's "inability to watch television in his cell . . . is not a significant hardship"); *Cosco*, 195 F.3d at 1224 ("regulation of type and quantity of individual possession" in prison cells reflects a typical type of restraint imposed on the prison population); *King v. Frank*, 328 F. Supp. 2d 940, 945 (W.D. Wis. 2004) ("being denied a television and radio" not atypical and significant hardship under *Sandin*); *Anderson v. Sundquist*, 1 F. Supp. 2d 828, 832 (W.D. Tenn. 1998) ("The allegation that plaintiff was confined to segregation or deprived of minor privileges such as packages or television viewing does not amount to an allegation of atypical and significant hardships in relation to the ordinary incidents of prison life and thus does not allege the deprivation of any liberty interest.") (internal quotation marks and citation omitted); *Warren v. Irvin*, 985 F. Supp. 350, 353 (W.D.N.Y.1997) (denial of telephone, packages, commissary, earphones, movies, television, and third-shower for 161 days "does not represent the type of deprivation which could reasonably be viewed as imposing atypical and significant hardship on an inmate."); *Manley v. Fordice*, 945 F. Supp. 132, 138 (S.D. Miss. 1996) ("not being allowed access to television and radio is not 'atypical' of prison life and certainly places no significant hardship on the individual"); *Robinson v. Moses*, 644 F. Supp. 975, 979 (N.D. Ind. 1986) (holding detainee in city-county lockup without television facilities not violation of Fourteenth Amendment). As Mr. Portier has not alleged any atypical and significant hardship, he has failed to allege the deprivation of a federally recognized liberty or property interest, and has no due process claim.

Even if Mr. Portier had a liberty or property interest in a loaner television, beyond demonstrating a protected interest, Mr. Portier must also show that he was deprived of that interest without due process. *See Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998) ("this inquiry examines the procedural safeguards built into the statutory or administrative procedure for effecting the deprivation and any remedies for erroneous deprivations . . . .") (internal quotation marks and citation omitted). "The intentional deprivation of property is not a fourteenth amendment violation if adequate state post-deprivation remedies are available." *Durre v. Dempsey*, 869 F.2d 543, 546 (10th Cir. 1989) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). *See also Zinermon v. Burch*, 494 U.S. 113, 131 (1990) (adequacy of post-deprivation remedies to redress random and unauthorized due process violations not limited to deprivations of protected property rights, but may also apply to deprivations of liberty interest). Colorado provides that a prisoner may sue a prison official for intentional deprivations of property. *See, e.g.,* Colo. Rev. Stat. § 24-10-105 (authorizing tort actions against public employees if their actions were "willful and wanton"). By his own allegations, Mr. Portier utilized the prison grievance procedures and filed a lawsuit regarding his television. (*See* doc. # 3 at p. 5 of 18). His lawsuit was later dismissed. (*See id.*). The Supreme Court has indicated that adequate inmate grievance procedures alone may provide a meaningful postdeprivation remedy for purposes of procedural due process. *See Hudson*, 468 U.S. at 536 n. 15. (property interest); *Zinermon*, 494 U.S. at 132 (liberty interest). As Mr. Portier has not alleged that he was denied an adequate postdeprivation remedy, he has not stated a claim for deprivation of due process.

3.   First Amendment

Mr. Portier alleges that Defendants violated his First Amendment rights when they intentionally deprived him of a loaner television set for 495 days in retaliation for filing a grievance on September 23, 2004 regarding his television set. Mr. Portier alleges that his

damaged television was retained as evidence for the grievance he filed. (*See* Complaint (doc. # 3) at p. 4 of 18). Mr. Portier alleges that he was denied a "loaner" television because he was only entitled to one television and he retained his personal television while it was held in evidence for the grievance process. (*See id.*). Mr. Portier alleges that if he had sent his personal television to be repaired, he would have been entitled to a loaner television. (*See* Complaint (doc. # 3) at p. 4 of 18).

Prison "officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks and citation omitted). "Because a prisoner must first file a grievance in order to ultimately gain access to courts to state a claim for relief under 42 U.S.C. § 1997e, then punishing him for actually filing grievances . . . would state a claim for both an access to courts and a First Amendment violation." *Purkey v. Green*, 28 Fed. Appx. 736, 745-46 (10th Cir. (Kan.) August 17, 2001).[3] Nevertheless, "an inmate is not inoculated from the normal conditions of confinement . . . merely because he has engaged in protected activity." *Peterson*, 149 F.3d at 1144. Not "every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim." *Dawes v. Walker*, 239 F.3d 489, 492-93 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144 (internal quotation marks and citation omitted). "[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, . . . would not have taken place." *Id.*

Mr. Portier's own allegations indicate that he was limited to one television by CDOC's Administrative Regulation ("AR") 850-06. (*See* Complaint (doc. # 3) at p. 15 of

---

[3] A copy of this unpublished case is attached to this Recommendation.

18).  Mr. Portier's own allegations indicate that Defendants denied him a loaner television because they interpreted CDOC's regulations as entitling him to only one television and that he retained a television while it was held in evidence for the grievance process.  (*See* Complaint (doc. # 3) at p. 4 of 18; *see also* AR 850-06 (doc. # 21-2) at p. 12 of 15).  Mr. Portier interprets the administrative regulations as merely restricting him to one television at a time in his cell.  (*See, e.g.* Response (doc. # 28) at p. 24 of 41; Surreply (doc. # 43) at p. 17 of 46).  Mr. Portier's different interpretation of the administrative regulations does not state a First Amendment retaliation claim.  Further, to the extent that Mr. Portier may be alleging that Defendants violated prison regulations, the "failure to adhere to administrative regulations does not equate to a constitutional violation."  *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993).  As Mr. Portier's allegations fail to support his claim that but for retaliation based on his filing of a grievance, he would have received a loaner television, his First Amendment claim fails.

      4.     Equal Protection

While no equal protection claim is specifically alleged in the Complaint, Mr. Portier argues in his briefs that he "was singled out arbitrarily for disparate treatment."  (*See, e.g.,* Response (doc. # 28) at pp. 13, 19, 26, 35 of 41).  Mr. Portier argues that within the context of his First, Eighth, and Fourteenth Amendment claims, he has also alleged a violation of his right to equal protection.  (*See id.*; *see also* Mr. Portier's Surreply (doc. # 43) at pp. 30-43 of 45).  To the extent that Mr. Portier may be alleging a violation of his right to equal protection, "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  "In order to sufficiently state an Equal Protection claim, a

prisoner must show: (1) that he is treated differently than a similarly situated class of inmates, (2) that the different treatment burdens one of his fundamental rights, and (3) that the different treatment bears no rational relation to any legitimate penal interest." *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 984 (8th Cir. 2004) (internal quotation marks and citation omitted). The challenged disparate treatment must be the result of purposeful discrimination. *Harris v. McRae*, 448 U.S. 297, 323 n. 26, 100 S.Ct. 2671 (1980). *See also Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (to properly allege equal protection claim, a plaintiff must plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.").

Mr. Portier has merely alleged that "he should have received a loaner television set for recreational interest, as all other offenders do . . . ." (*See* Complaint (doc. # 3) at p. 7 of 18). Mr. Portier has not identified any specific inmates, how they were similarly situated, or what treatment they received with regard to access to a loaner television. Mr. Portier presents only general argument in his briefs that he received different treatment than unspecified other inmates. "Absent a threshold showing that [he] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994). *See also Samaad v. City of Dallas*, 940 F.2d 925, 941 (5th Cir. 1991) (holding that black residents failed to state an equal protection claim where they did not allege the existence of a similarly situated group of white residents who were treated differently).

Mr. Portier has not alleged that he is a member of a constitutionally protected class. It is also clear that he does not have a fundamental right to a loaner television. *See, e.g., Elliott v. Brooks*, 188 F.3d 518 at *1 (no constitutional right to watch television in prison); *James v. Milwaukee Cty.*, 956 F.2d at 699 (no constitutional right to television in prison); *Temple v. Dahm*, 905 F. Supp. 670, 674 (D. Neb. 1995) ("Plaintiff has no right to view

television as arising from the Constitution.") (citation omitted). Therefore, the denial of a loaner television must only bear a rational relationship to a legitimate state purpose. *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (citation omitted). Mr. Portier's own allegations support the denial of a loaner television based on the regulation limiting each inmate to one television, even where the inmate's television is held as evidence in a grievance. In sum, Mr. Portier's allegations are entirely conclusory and fail to state an Equal Protection claim.

5. Qualified Immunity

Defendants raise the defense of qualified immunity. Whether Defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229 (2008).

> When [a defendant] asserts a defense of qualified immunity, the plaintiff bears a heavy two-part burden. Initially, the plaintiff must show the [defendant]'s conduct violated a constitutional right: A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant]'s conduct violated a constitutional right?

*Wilder v. Turner*, 490 F.3d at 813 (internal quotation marks and citations omitted). *See also Wilson v. Layne*, 526 U.S. 603, 609 (1999) (a court evaluating a claim of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.") (citation omitted); *Butler v. City of Prairie Village, Kansas*, 172 F.3d 736, 745 (10th Cir. 1999) (court "must first determine 'whether the plaintiff has sufficiently alleged that the defendant violated a statutory or constitutional right' . . . If the plaintiff has asserted such a deprivation, *only then* do we inquire 'whether the right was clearly established such that a reasonable person in the defendant's position would have known that his or her conduct violated that right' ") (citation omitted).

Having concluded above that Mr. Portier has failed to state a claim that Defendants' conduct violated a constitutional right, "the inquiry ends and the [defendant] is entitled to qualified immunity." *Wilder v. Turner*, 490 F.3d at 813 (citation omitted).

6. Statute of Limitations for § 1983 Claims

Defendants further argue that Mr. Portier's claims are barred by the statute of limitations. Mr. Portier brings his claims pursuant to 42 U.S.C. § 1983. Federal courts must look to the applicable state statute of limitations to determine the timeliness of a claim under § 1983. *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993). Colorado law provides a two-year statute of limitations for actions brought pursuant to § 1983. *See* Colo. Rev. Stat. § 13-80-102(g) (establishing a two-year limitation period for "all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "all other actions of every kind for which no other period of limitation is provided"); *Blake*, 997 F.2d at 750 (applying § 13-80-102 to § 1983 claim).

It is undisputed that Mr. Portier filed the Complaint on or about January 24, 2008. (*See* doc. # 1).[4] Thus, under Colorado's applicable two-year statute of limitations provision, Mr. Portier's claims are untimely unless they accrued on or after January 24, 2006. The determination of when a § 1983 action accrues is controlled by federal rather than state law. *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) (citation omitted). "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of injury which is the basis of his action." *Industrial Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994).

Mr. Portier alleges that he "was wrongfully denied a televison set for a period of 495 days," from the filing of his grievance on September 23, 2004 to the loss of his television

---

[4] A prisoner's *pro se* complaint alleging a § 1983 action against state prison officials is treated as filed with the court on the date the prisoner gave it to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 271 (1988).

privileges on January 18, 2006. (*See* Complaint (doc. # 3) at p. 5 of 18). Mr. Portier clarifies that as of January 18, 2006 he was no longer entitled to a television, as "his privileges were restricted for refusing classes." (Complaint (doc. # 3) at p. 5 of 18). Mr. Portier's claims arise from conduct that he alleges occurred between September 23, 2004 and January 18, 2006. Based upon his own allegations, Mr. Portier challenges only conduct that occurred prior to January 18, 2006. Mr. Portier filed the Complaint more than two years after the last possible date that the challenged conduct occurred.

Mr. Portier argues that the statute of limitations must be tolled because he "didn't realize that they were violating his constitutionally protected rights" until February 15, 2006, "when he filed grievance # 05/06-711." (*See* Surreply (doc. # 43) at p. 5 of 46); Complaint (doc. # 3) at pp. 14-16 of 18). Mr. Portier's argument appears better addressed to the accrual of his claims rather than tolling and fails as to both accrual and tolling. "[I]t is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue." *Baker v. Board of Regents of State of Kansas*, 991 F.2d 628, 632 (10th Cir. 1993). At any time prior to January 18, 2006, the last day of the alleged denial of a loaner television, Mr. Portier knew or had reason to know of the injury which formed the basis of his claims. (*See, e.g.,* Response (doc. # 28) at p. 14 of 41 ("Plaintiff clearly allege [sic] in his complaint that there were several denials of a loaner television set by Lt. DeFusco and Lt. Olinette. The first denial Lt. Olinette did began on September 24, 2004, and continued to January 18, 2006, with denials in between.")).

The issue of tolling, like the statute of limitations, is governed by Colorado state law. *Hardin v. Straub*, 490 U.S. 536, 539 (1989); *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995). "Once the statute of limitations is raised as an affirmative defense, the burden shifts to the plaintiff to show that the statute has been tolled." *Overheiser v. Safeway Stores, Inc.*, 814 P.2d 12, 13 (Colo. App. 1991). Under Colorado law, the doctrine of equitable tolling "permits the statute of limitations to be tolled only where the defendant's wrongful conduct

prevented the plaintiff from asserting the claims in a timely manner or truly exceptional circumstances prevented the plaintiff from filing the claim despite diligent efforts." *Morrison v. Goff*, 74 P.3d 409, 412-13 (Colo. App. 2003) (citation omitted), *cert. granted in part on other grounds*, Colo. Jul 21, 2003. *See also Sandoval v. Archdiocese of Denver*, 8 P.3d 598, 604-05 (Colo. App. 2000) ("[i]n order for a statute of limitations to be tolled because of equitable considerations, it is the plaintiff's burden to establish that the defendant's actions prevented her from filing a timely claim.") (citation omitted). Mr. Portier argues that because Defendants denied that they were wrongfully withholding a loaner television from him, "it wasn't until February 15, 2006 after Plaintiff received additional information that he knew for sure that his constitutional rights were being violated." (Response (doc. # 28) at p. 15 of 41). Defendants' denial of wrongdoing
does not provide sufficient justification for application of the doctrine of equitable tolling.

"At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n. 13 (11th Cir. 2005) (internal quotation marks and citations omitted). *See also United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (complaint may be dismissed where the "allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations") (citation omitted). Mr. Portier has not sufficiently alleged that Defendants acted affirmatively to prevent him from discovering his cause of action and timely filing his claims. The allegations here plainly support dismissal of Mr. Portier's claims as barred by the statute of limitations.

7. Compensatory Damages

Mr. Portier has not alleged that he suffered any physical injury, which is a

requirement for an inmate to bring a federal claim for monetary damages.  *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").  *See also Turner v. Schultz*, 130 F. Supp. 2d 1216, 1222-23 (D. Colo. 2001) ("[A]lthough claims for mental and emotional distress can be brought pursuant to § 1983, . . . § 1997e(e) provides that 'such a suit cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.'") (quoting *Perkins v. Kansas Dept. Corrections*, 165 F.3d 803, 807 (10th Cir. 1999)); *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) ("The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional."); *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002) (citing 42 U.S.C. § 1997e(e)) ("As to [a] claim for emotional distress, no § 1983 action can be brought unless the plaintiff has suffered physical injury in addition to mental and emotional harms.").

Mr. Portier alleges only mental and emotional distress as his injury and seeks only monetary damages as relief.  *See* Complaint (doc. # 3) at p. 12 of 18).  As Mr. Portier makes no allegation of physical injury and seeks only monetary damages, Defendants are entitled to dismissal of his claims pursuant to § 1997e(e) for failure to state a claim upon which relief can be granted.


Accordingly, IT IS RECOMMENDED that Defendants' "Motion to Dismiss" (filed April 28, 2008) (doc. # 21) be GRANTED and that this civil action be dismissed for failure to state a claim upon which relief can be granted.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 26th day of November, 2008.

                              BY THE COURT:

                              <u>   s/Craig B. Shaffer    </u>
                              United States Magistrate Judge